UNITED STATES COURT OF INTERNATIONAL TRADE
NEW YORK, NEW YORK

BEFORE: UNASSIGNED

| | |
|---|---|
| BYD (SHANGLUO) INDUSTRIAL CO., LTD. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v ) | Court No. 22-00226 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## COMPLAINT

Pursuant to Rule 3(a)(2) of the Rules of the United States Court of International Trade, Plaintiff BYD (Shangluo) Industrial Co., Ltd. ("Shangluo BYD"), by and through undersigned counsel, alleges and states as follows:

### ADMINISTRATIVE DETERMINATION TO BE REVIEWED

1. Shangluo BYD contests certain aspects of the final results issued by the U.S. Department of Commerce, International Trade Administration ("Commerce"), in its eighth administrative review of the antidumping duty ("AD") order on Crystalline Silicon Photovoltaic Cells, Whether Or Not Assembled Into Modules, from the People's Republic Of China, Case No. A-570-979.  The final determination was published as *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China*, 87 Fed. Reg. 38,379 (Dep't of Commerce June 28, 2022) (final results of antidumping duty administrative review and final determination of no shipments; 2019-2020) ("*Final Results*").  This appeal also contests certain aspects of Commerce's accompanying Issues and Decision Memorandum for the *Final Results*. Memorandum from Scot Fullerton to Lisa W. Wang, *Issues and Decision*

*Memorandum for the Final Results of the 2019-2020 Antidumping Duty Administrative Review of Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China*, Case No. A-570-979 (2019-2020 Review) (Dep't of Commerce June 21, 2022) ("*Final Results Issues and Decision Memo*").

The *Final Results* were subsequently amended, retroactively, on August 3, 2022, to correct an alleged "ministerial error" in the final results "by inadvertently using the incorrect average unit value for the Malaysian Harmonized Tariff Schedule ("HTS") subheading that we selected to value the mandatory respondents' aluminum frames, profiles, keys, and extrusions." *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China*, 87 Fed. Reg. 48,621 (Dep't of Commerce Aug. 10, 2022) (amended final results of antidumping duty administrative review, 2019-2020) ("*Amended Final Results*"). See also Memorandum from Robert Bolling to James Maeder, *Ministerial Error Allegation in the Final Results*, Case No. A-570-979 (2019-2020 Review) (Dep't of Commerce Aug. 3, 2022).

2. The period of review ("POR") was December 1, 2019, through November 30, 2020.

## JURISDICTION

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c). That section confers on the U.S. Court of International Trade exclusive jurisdiction to review final antidumping duty determinations issued by Commerce under Section 516A(a)(2)(A)(i) and (B)(iii) of the Tariff Act of 1930, *as amended*, 19 U.S.C. § 1516a(a)(2)(A)(i) and (B)(iii).

## NAME AND STANDING OF PLAINTIFF

4. Shangluo BYD is a foreign producer and exporter of crystalline silicon photovoltaic cells, whether or not assembled into modules, from the People's Republic of China. Shanglou BYD participated in the review as a non-selected "separate rate respondent" and was assigned a

final antidumping duty rate in the review. Shanglou BYD actively participated in the proceeding through submission of factual information and/or written argument, including the filing of a case brief and separate rate certification. Shangluo BYD is therefore an interested party within the meaning of section 771(9)(A) of the Act, 19 U.S.C. § 1677(9)(A), and has standing to bring this action under 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d).

## TIMELINESS OF THIS ACTION

5.     Section 516A(a)(2)(A)(i) of the Act requires that, in actions challenging Commerce's determinations described in Section 516A(a)(2)(B)(iii), the summons must be filed within thirty (30) days of the date of publication in the *Federal Register* of the determination, and the complaint must be filed within thirty (30) days thereafter. 19 U.S.C. § 1516a(a)(2)(A)(i). On July 28, 2022, within thirty (30) days after the publication of the *Final Results* on June 28, 2022, Shangluo BYD filed a summons to initiate this action. Thus, this action was timely commenced within the period specified in 19 U.S.C. §§ 1516a(a)(2)(B)(iii). Thirty (30) days from July 28, 2022, was Saturday, August 27, 2022. Therefore, pursuant to U.S. Court of International Trade Rule 3(a)(2), the deadline for the filing of this Complaint is August 29, 2022. Accordingly, this action has been timely brought. 19 U.S.C. § 1516a(a)(2)(A)(i).

## STANDARD OF REVIEW

6.     This Court reviews final determinations issued by Commerce pursuant to 19 U.S.C. § 1675(a) to determine whether they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

**STATEMENT OF FACTS**

7. On December 7, 2012, Commerce published in the *Federal Register* the amended final determination and antidumping duty order covering crystalline silicon photovoltaic cells, whether or not assembled into modules, from the People's Republic of China. *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China*, 77 Fed. Reg. 73,018 (Dep't of Commerce Dec. 7, 2012) (amended final determination of sales at less than fair value, and antidumping duty order).

8. On February 4, 2021, Commerce published a notice initiating the eighth antidumping administrative review, covering a POR from December 1, 2019, through November 30, 2020. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 86 Fed. Reg. 8,166, 8,168 (Dep't of Commerce Feb. 4, 2021) ("*Initiation Notice*").

9. On February 25, 2021, Commerce selected two mandatory respondents – (1) Jinko, consisting of Jinko Solar Import and Export Co., Ltd.; Jinko Solar Co., Ltd; JinkoSolar Technology (Haining) Co., Ltd.; Yuhuan Jinko Solar Co., Ltd.; Zhejiang Jinko Solar Co., Ltd.; Jiangsu Jinko Tiansheng Solar Co., Ltd.; JinkoSolar (Chuzhou) Co., Ltd.; JinkoSolar (Yiwu) Co., Ltd.; and JinkoSolar (Shangrao) Co., Ltd. (collectively, "Jinko"), and (2) Risen, consisting of Risen Energy Co., Ltd.; Risen (Wuhai) New Energy Co., Ltd.; Zhejiang Twinsel Electronic Technology Co., Ltd.; Risen (Luoyang) New Energy Co., Ltd.; Jiujiang Shengzhao Xinye Technology Co., Ltd.; Jiujiang Shengzhao Xinye Trade Co., Ltd. Ruichang Branch; Risen Energy (HongKong) Co., Ltd.;, Risen Energy (Changzhou) Co., Ltd.; and Risen Energy (YIWU) Co., Ltd. (collectively, "Risen"). Memorandum from Jeff Pedersen to Abdelali Elouaradia, *Respondent Selection*, Case No. A-570-979 (2019-2020 Review) (Dep't of Commerce Feb. 25, 2021).

10. Jinko and Risen submitted questionnaire responses to Commerce's initial antidumping questionnaire, a questionnaire regarding double remedies, supplemental questionnaires, and other factual submissions from May and August 2021. *See* Memorandum from James Maeder to Ryan Majerus, *Decision Memorandum for the Preliminary Results of the 2019-2020 Antidumping Duty Administrative Review of Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, From the People's Republic of China*, Case No. A-570-979 (2019-2020 Review) (Dep't of Commerce Dec. 16, 2021) ("*Prelim Results Issues and Decision Memo*") at 2. Jinko and Risen also submitted comments on surrogate country selection and surrogate values ("SVs") from May to August 2021. *Id.* at 2.

11. Shangluo BYD filed a separate rate certification on March 15, 2021. Letter from Hogan Lovells US LLP to the U.S. Department of Commerce, *Separate Rate Certification of BYD (Shangluo) Industrial Co., Ltd.*, Case No. A-570-979 (2019-2020 Review) (Mar. 15, 2021).

12. On December 23, 2021, Commerce published in the *Federal Register* the preliminary results of its eighth administrative review. *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China*, 86 Fed. Reg. 72,923 (Dep't of Commerce Dec. 23, 2021) (preliminary results of antidumping duty administrative review, partial rescission of antidumping administrative review, and preliminary determination of no shipments; 2019-2020) ("*Preliminary Results*"). Commerce assigned weighted-average dumping margins of 32.69% to Jinko and 19.26% to Risen. *Id.* at 72,925. Commerce assigned weighted-average dumping margins of 23.17% to the companies entitled to separate rate status. *Id.*

13. In the *Preliminary Results*, Commerce applied partial adverse facts available ("AFA") to the missing factors of production ("FOP") data not reported by Risen's unaffiliated solar cell and solar module producers. *Prelim Results Issues and Decision Memo* at 15.

14. In the *Preliminary Results*, when applying partial AFA to Risen, Commerce calculated average ratios of the reported consumption quantities to the highest consumption quantities for three separate groups of inputs, all solar module FOPs, all solar cell FOPs, and all packing FOPs. Commerce then multiplied the reported per-unit consumption quantity of each solar module FOP, each solar cell FOP, and each packing FOP, by the relevant average adjustment ratio to increase the reported quantities, as AFA. Memorandum to the File from Jeff Pedersen, *Preliminary Results Analysis Memorandum – Risen*, Case No. A-570-979 (2019-2020 Review) (Dep't of Commerce Dec. 16, 2021) at 3 ("Risen Prelim Analysis Memo"). Additionally, in calculating its average AFA adjustment ratios, Commerce divided the average of the consumption figures for that input that were reported for multi-crystalline CONNUMs, other than the multicrystalline CONNUM with the highest per-unit consumption of the input, by the highest consumption figure reported by Risen for that input for any multi-crystalline CONNUM. Risen Prelim Analysis Memo at 3. Lastly, Commerce added the percentage of solar cells for which FOP data were not reported to the percentage of modules for which FOP data were not reported to derive the portion of solar cells for which FOP data were not reported to Commerce. Risen Prelim Analysis Memo at 3.

15. In the *Preliminary Results*, Commerce valued solar glass using import values under Romanian HTS subheading 7007.19.80. Memorandum to the File from Jeff Pedersen, *Factor Valuation Memorandum*, Case No. A-570-979 (2019-2020 Review) (Dep't of Commerce Apr. 16, 2021) at 3 ("Prelim SV Memo").

16. In the *Preliminary Results*, Commerce based the SV for ocean freight expenses on the Maersk Line and Descartes data. *Prelim Results Issues and Decision Memo* at 27; *see also* Prelim SV Memo at 8.

17. In the *Preliminary Results*, Commerce calculated the surrogate financial ratios only using JA Solar's financial statements. Prelim SV Memo at 9.

18. In the *Preliminary Results*, Commerce used data from Freightos to value the air freight services used by Jinko. *Final Results Issues and Decision Memo* at 27; *see also* Prelim SV Memo at 6.

19. In the *Preliminary Results*, Commerce valued Risen's backsheets using import values under Malaysian HTS 3920.62.10 (Polyethylene Terphthalate: Plates and sheets). Prelim SV Memo at Excel Attach. "Attach I Risen SVs."

20. In the *Preliminary Results*, Commerce valued Risen's EVA using import values under Malaysian HTS 3920.10.19 (Polyethylene of ethylene: plates and sheets (other than rigid)). *Id.*

21. In the *Preliminary Results*, Commerce valued Jinko's M_Weldingwire using import values under Malaysian HTS 8311.30.91. Prelim SV Memo and accompanying Excel Attachment "Other SV Attachments" at Tab "Attach I Jinko SVs."

22. In the *Preliminary Results*, Commerce valued Jinko's P_C_Spongecover using import values under HTS 3923.50. *Id.*

23. In the *Preliminary Results*, Commerce valued Jinko's P_M_Wooden_Board and P_M_Lift_Stand using import values under HTS 4415.20. *Id.*

24. In the *Preliminary Results*, Commerce valued steam using import values under HTS 2711.11. Prelim SV Memo at 4-5.

25. In the *Preliminary Results*, Commerce used the Malaysian Investment Development Authority's publication Cost of Doing Business to determine the SV for electricity, but excluded electricity rates for off-peak hours and rates applicable to the geographical regions other than peninsular Malaysia. *Id.* at 4.

26. In the *Preliminary Results*, Commerce deducted Section 301 duties from U.S. sales prices when calculating Jinko's dumping margin. Memorandum to the File from Howard Smith, *Preliminary Results Analysis Memorandum – Jinko*, Case No. A-570-979 (2019-2020 Review) (Dep't of Commerce Dec. 16, 2021) at 3.

27. Shanglou BYD timely submitted its case brief on January 28, 2022, affirming that Shangluo BYD was entitled to a separate rate and concurring with and incorporated by reference the arguments made by Jinko and Risen for Commerce's consideration prior to issuing the *Final Results*. *Final Results Issues and Decision Memo* at 3.

28. On February 10, 2022, Shanglou BYD submitted a letter in lieu of a rebuttal brief incorporating all rebuttal arguments made by Jinko and Risen. *Id.* at 3.

29. On June 28, 2022, Commerce published its *Final Results* in the *Federal Register*. Commerce acknowledged and corrected its error with respect to Shangluo BYD's filing of a separate rate certification and assigned Shangluo BYD a separate rate.

30. Commerce, with certain adjustments, continued to apply partial AFA to calculate Risen's dumping margin on the basis of the missing FOPs. Furthermore, over the objections raised by Jinko and Risen, as well as Shangluo BYD by reference, Commerce continued to use the same SVs for the FOPs discussed in Paragraphs 15 through 25 that were relied on in the *Preliminary Results*. Additionally, Commerce continued to deduct from U.S. price Section 301 duties. Commerce assigned weighted-average dumping margins of 15.71% to Jinko and 8.00% to Risen,

which also resulted in a revision of the dumping margin for separate rate respondents, including Shangluo BYD, to 10.24%.  *Final Results* at 38,380.

## STATEMENT OF CLAIMS

### COUNT ONE

31.    Paragraphs 1 to 30 are adopted and incorporated herein by reference.

32.    In the *Final Results*, Commerce applied partial AFA to the missing FOP data not reported by Risen's unaffiliated solar cell and solar module producers. *Final Results Issues and Decision Memo* at 8.  However, the missing FOP data were not material and Risen acted to the best of its ability to gain cooperation from its unaffiliated producers.  Therefore, Commerce's application of AFA was not supported by substantial evidence and was otherwise not in accordance with law.

### COUNT TWO

33.    Paragraphs 1 to 32 are adopted and incorporated herein by reference.

34.    In the *Final Results*, when applying partial AFA to Risen, Commerce calculated average ratios of the reported consumption quantities to the highest consumption quantities for three separate groups of inputs: all solar module FOPs, all solar cell FOPs, and all packing FOPs. Commerce then multiplied the reported per-unit consumption quantity of input by the relevant average adjustment ratio to increase the reported quantities, as AFA.  *Id.* at 11.  However, there is no justification for calculating and applying average AFA ratios on this broader, distortive basis. Additionally, Commerce divided the average of the consumption figures fo reach input that was reported for multi-crystalline CONNUMs, other than the multi-crystalline CONNUM with the highest per-unit consumption of the input, by the highest consumption figure reported by Risen for that input for any multi-crystalline CONNUM.  *Id*.  However, by excluding the highest per-

unit consumption quantity from the denominator of the ratio, Commerce overstated the AFA rate. Lastly, Commerce added the percentage of solar cells for which FOP data were not reported to the percentage of modules for which FOP data were not reported to derive the portion of solar cells for which FOP data were not reported to Commerce. *Id.* at 62. However, this was contrary to the AFA methodology that Commerce used in its prior reviews. Therefore, Commerce's application of AFA was not supported by substantial evidence and was otherwise not in accordance with law

## COUNT THREE

35. Paragraphs 1 to 34 are adopted and incorporated herein by reference.

36. In the *Final Results*, Commerce valued solar glass using import values under Romanian HTS subheading 7007.19.80 rather than Malaysian HTS 77007,19.90. *Id.* at 15-16. However, Commerce has a preference to source all SVs from the same primary surrogate country, which is Malaysia in this case and Commerce frequently converts units of measurement. Moreover, Romanian import data are less precise. Therefore, Commerce's valuation of solar glass using Romanian HTS subheading 7007.19.80 was not supported by substantial evidence and was otherwise not in accordance with law.

## COUNT FOUR

37. Paragraphs 1 to 36 are adopted and incorporated herein by reference.

38. In the *Final Results*, Commerce based the ocean freight expenses SV on the Maersk Line and Descartes data. *Id.* at 22. However, the Maersk data are unreliable and otherwise of inferior quality. Therefore, Commerce's use of Maersk Line data was not supported by substantial evidence and was otherwise not in accordance with law.

## COUNT FIVE

39. Paragraphs 1 to 38 are incorporated herein by reference.

40. In the *Final Results*, Commerce based the surrogate financial ratios only using JA Solar's financial statements. *Id.* at 37. Commerce should have considered using other financial statements of producers of identical merchandise to, in part, derive a broader market average. Therefore, Commerce's reliance only on JA Solar's financial statements was not supported by substantial evidence and was otherwise not in accordance with law.

## COUNT SIX

41. Paragraphs 1 to 40 are incorporated herein by reference.

42. In the *Final Results*, Commerce used Freightos data to value the air freight services used by Jinko. *Id.* at 41. However, Commerce should have used the International Air Transport Association ("IATA") data because the data are the best source of heavier weight shipments because the data are sourced from IATA's clearinghouse where nearly all freight forwarders and airlines settle charges in net prices on thousands of air freight shipments each month. Therefore, Commerce's reliance only on Freightos data was not supported by substantial evidence and was otherwise not in accordance with law.

## COUNT SEVEN

43. Paragraphs 1 to 42 are incorporated herein by reference.

44. In the *Final Results*, Commerce valued Risen's backsheets using import values under Malaysian HTS 3920.62.10 (Polyethylene Terphthalate: Plates and sheets). *Id.* at 45. However, Commerce should have valued Risen's backsheets using import values under Malaysian HTS 3920.62.90 – Other (i.e., not plates and sheets) because industry standards indicate that backsheets are typically a thin, flexible film. Commerce used this "other" HTS category in five previous administrative reviews under these orders. Therefore, Commerce's valuation of Risen's

backsheets using Malaysian HTS 3920.62.10 was not supported by substantial evidence and was otherwise not in accordance with law.

## COUNT EIGHT

45.   Paragraphs 1 to 44 are incorporated herein by reference.

46.   In the *Final Results*, Commerce valued Risen's EVA using import values under Malaysian HTS 3920.10.19 (Polyethylene of ethylene: plates and sheets (other than rigid)). *Id.* at 46.  However, Commerce should have used Malaysian HTS 3920.10.90, which covers film, because EVA is considered a flexible film.  Therefore, Commerce's valuation of Risen's EVA using Malaysian HTS 3920.10.19 was not supported by substantial evidence and was otherwise not in accordance with law.

## COUNT NINE

47.   Paragraphs 1 to 46 are incorporated herein by reference.

48.   In the *Final Results*, Commerce valued Jinko's M_Weldingwire using import values under Malaysian HTS 8311.30.91.  *Id.* at 48.  Commerce should have used Malaysian HTS 8311.20.90 because Jinko's M_Weldingwire is cut into pieces in straight lengths (not rolls) and is consistent with imports under Malaysian HTS 8311.20.91.  Therefore, Commerce's valuation of Jinko's M_Weldingwire using Malaysian HTS 8311.30.91 was not supported by substantial evidence and was otherwise not in accordance with law.

## COUNT TEN

49.   Paragraphs 1 to 48 are incorporated herein by reference.

50.   In the *Final Results*, Commerce valued Jinko's P_C_Spongecover using import values under HTS 3923.50.  *Id.* at 53.  Commerce should have used Malaysian HTS 3910.10.90 because P_C_Spongecover comprises polyethylene strips joined to form a cover to pack solar cells

and HTS 2923.50 is a basket category of miscellaneous plastic materials. Therefore, Commerce's valuation of Jinko's P_C_Spongecover using HTS 3923.50 was not supported by substantial evidence and was otherwise not in accordance with law.

## COUNT ELEVEN

51. Paragraphs 1 to 50 are incorporated herein by reference.

52. In the *Final Results*, Commerce valued Jinko's P_M_Wooden_Board and P_M_Lift_Stand using import values under HTS 4415.20. *Id.* at 56. However, Commerce should have used HTS 4413 because Jinko's P_M_Wooden_Board is a higher level of finished product than a wooden pallet and is closer to blocks and plates of wood and Jinko's P_M_Lift_Stand is more similar in size to wooden boards than wooden pallets. Therefore, Commerce's valuation of Jinko's P_M_Wooden_Board and P_M_Lift_Stand using HTS 4415.20 was not supported by substantial evidence and was otherwise not in accordance with law.

## COUNT TWELVE

53. Paragraphs 1 to 52 are incorporated herein by reference.

54. In the *Final Results*, Commerce valued steam using import values under HTS 2711.11. *Id.* at 58. However, Commerce should have valued steam by multiplying import values under Malaysian HTS 27.21.90 by a conversion factor of 0.1452 because Jinko purchased steam in a gaseous state and HTS 2711.11 covers liquid natural gas. Therefore, Commerce's valuation of steam using HTS 2711.11 was not supported by substantial evidence and was otherwise not in accordance with law.

## COUNT THIRTEEN

55. Paragraphs 1 to 54 are incorporated herein by reference.

56. In the *Final Results*, Commerce used the Malaysian Investment Development Authority's publication Cost of Doing Business to determine the SV for electricity, but excluded electricity rates for off-peak hours and rates applicable to geographical regions other than peninsular Malaysia. *Id.* at 59-60. However, Commerce should not have excluded those rates because Jinko manufactures solar cells and modules twenty-four hours a day and the rates for other geographical regions are necessary to obtain a broad market average price which is one of the goals in selecting SVs. Therefore, Commerce's exclusion of electricity rates for off-peak hours and rates applicable to geographical regions other than peninsular Malaysia was not supported by substantial evidence and was otherwise not in accordance with law.

## COUNT FOURTEEN

57. Paragraphs 1 to 56 are incorporated herein by reference.

58. In the *Final Results*, Commerce deducted Section 301 duties from U.S. sales prices when calculating Jinko's dumping margin. *Id.* at 73-74. However, Section 301 duties are special, remedial duties, and not the normal import duties that are deducted from subject merchandise. Therefore, Commerce's decision to deduct Section 301 duties was not supported by substantial evidence and was otherwise not in accordance with law.

## COUNT FIFTEEN

59. Paragraphs 1 to 58 are incorporated herein by reference.

60. Commerce's calculation of the "all others" rate based on a weighted-average of the rates calculated for Jinko and Risen, and the assignment of that rate to Shanglou BYD were not supported by substantial evidence and contrary to law because of the errors outlined above in Counts One through Fourteen.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

(a)  hold that the *Final Results* are unsupported by substantial evidence and otherwise not in accordance with law;

(b)  remand the *Final Results* with instructions to issue a new determination that is consistent with the Court's decision; and

(c)  provide such other and further relief as this Court deems just and proper.

    Respectfully submitted,

    /s/ Craig A. Lewis
    Craig A. Lewis
    Nicholas W. Laneville
    Molly B. Newell

    HOGAN LOVELLS US LLP
    Columbia Square
    555 Thirteenth Street, N.W.
    Washington, DC 20004-1109
    (202) 637-8613
    craig.lewis@hoganlovells.com

    *Counsel to BYD (Shangluo) Industrial Co., Ltd..*

Date: August 29, 2022